UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WANDA DAVIS,<br><br>       Plaintiff,<br><br>v.<br><br>THE CITY OF SEATTLE, and MICHAEL KORLING,<br><br>       Defendants. | No. C06-1659Z<br><br>ORDER |

THIS MATTER comes before the Court on defendant City of Seattle's motion for protective order. Having reviewed all papers filed in support of and opposition to the motion, the Court does hereby ORDER:

(1) Plaintiff's Motions to Strike, docket nos. 158 and 164, are DENIED.

(2) The City of Seattle's Motion for Protective Order RE: Attorney-Client Privilege, docket no. 138, is GRANTED. The City of Seattle is NOT required to produce in discovery any of the documents listed in the Amended Privilege Log, which is attached as Exhibit B to the Second Declaration of Fritz Wollett, docket no. 162.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

ORDER - 1

**Background**

Plaintiff Wanda Davis works for Seattle City Light, which is an electric utility owned by the City of Seattle. In this lawsuit, she alleges disparate treatment, hostile work environment, and retaliation. Since July 2001, Ms. Davis has been a crew chief at Seattle City Light's South Substation. Edward Richards has worked on Ms. Davis's crew since October 2002. Mr. Richards has occasionally performed Ms. Davis's responsibilities as crew chief. Karl Horne has also been a member of Ms. Davis's crew, being assigned in July 2002 as an apprentice, then transferring to another crew, but returning in April 2004 as a journey-level electrician constructor. While an apprentice, Mr. Horne accused Ms. Davis of discrimination. After investigation by Kathleen O'Hanlon, an attorney with Marcella Fleming Reed PLLC, Ms. Davis was exonerated as to the discrimination claim, but was found in violation of workplace expectations. *See* Investigation Report dated June 6, 2005, Exh. 4 to Sheridan Decl. (docket no. 157). She was suspended from work for two days.

In January 2006, Ms. Davis filed a complaint against her supervisor, Bill Ivie, alleging discrimination on the basis of disability and gender in making overtime and out-of-class assignments. After investigation by Branda Andrade, the Equal Employment Opportunity ("EEO") and Diversity Manager for Seattle City Light, Mr. Ivie was found not to have discriminated against Ms. Davis on the basis of disability or gender, but was determined to have violated workplace expectations by communicating with Ms. Davis in a disrespectful manner. *See* Investigation Report dated July 31, 2006, Exh. 5 to Sheridan Decl. (docket no. 157).

In November 2006, Seattle City Light received an anonymous written complaint alleging that Ms. Davis and Mr. Richards enabled a non-employee to enter the South Substation and practice for an upcoming apprenticeship working test. An investigation was performed by Colleen Kinerk, an attorney and partner in the firm Cable, Langenbach, Kinerk & Bauer, LLP. For workload and other reasons, the City of Seattle frequently engages the

services of external investigators.  In this instance, Ms. Kinerk was selected because she is highly regarded and had not previously worked for Seattle City Light.  Andrade Decl. at ¶ 8 (docket no. 140).  The decision to use Ms. Kinerk's services was based in part on Ms. Davis's pending litigation and her assertion therein that Ms. Andrade, who otherwise would have conducted the investigation, was biased and unqualified.  *Id.* at ¶ 7.  In light of the circumstances, Ms. Andrade believed that an outside investigator would best preserve the appearance of fairness to Ms. Davis.  *Id.*  Pursuant to standard procedures, Ms. Andrade specifically instructed Ms. Kinerk to consult with the Seattle City Attorney's Office before finalizing her investigative report.  *Id.* at ¶ 8; Hughes Decl. at ¶ 7 (docket no. 143).

In December 2006, Ms. Kinerk submitted a 22-page report, opining that Ms. Davis and Mr. Richards had violated safety protocols, workplace expectations, and ethics standards.  *See* Letter Report, Exh. 3 to Sheridan Decl. (docket no. 157).  After Ms. Davis and Mr. Richards submitted materials in response to Ms. Kinerk's report, Ms. Kinerk was asked to make additional inquiries and provide a supplemental report, which she did in June 2007.  *See* Supplemental Letter Report, Exh. 3 to Sheridan Decl. (docket no. 157).  Based on the reports prepared by Ms. Kinerk, and after reviewing Ms. Davis's written materials and oral statements, the Superintendent of Seattle City Light, Jorge Carrasco, issued a written decision demoting Ms. Davis from crew chief to journey worker.  Letter Ruling dated July 24, 2007, Exh. 2 to Sheridan Decl. (docket no. 157).

During the course of this litigation, the City of Seattle produced a log of 157 documents as to which it claims attorney-client privilege.  *See* Exh. A to Wollett Decl. (docket no. 139).  Based on its understanding that plaintiff is challenging the assertion of privilege with respect to communications between the Seattle City Attorney's Office and Seattle City Light's external investigators, the City of Seattle filed the motion for protective order now pending before the Court.  In response to the motion, plaintiff clarified that only four types of documents are sought in discovery:

- Draft reports by Kathleen O'Hanlon concerning Mr. Horne's complaint against Ms. Davis

- Draft reports by Branda Andrade concerning Ms. Davis's complaint against Mr. Ivie

- Draft reports by Colleen Kinerk concerning the anonymous complaint against Ms. Davis and Mr. Richards involving Aaron Duvall

- Draft reports by Branda Andrade concerning an investigation of Mr. Horne's use of a work computer

In reply, the City of Seattle indicated that the first set of documents, authored by Ms. O'Hanlon, has already been produced, Wollett Supp. Decl. at ¶ 5 and Exh. E (docket no. 162), and the second and fourth groups do not exist because Ms. Andrade never generated any drafts, *id.* at ¶ 6. Thus, the only dispute before the Court is whether Ms. Kinerk's draft reports are protected from discovery by attorney-client privilege.

**Discussion**

**A.     Motions to Strike**

Plaintiff moves to strike portions of various declarations on foundation, hearsay, and scope grounds. The Court is satisfied that the declarations at issue are based on personal knowledge, that any statements of others contained therein are not offered for the truth of the matter asserted but rather to show the effect on the declarant, and that the matters addressed in supplemental declarations are within the scope of proper reply to plaintiff's response concerning the motion for protective order. Thus, the Court DENIES plaintiff's motions to strike.

**B.     Attorney-Client Privilege**

The federal common law of attorney-client privilege applies to federal claims, while state law concerning privilege governs as to claims or defenses for which state law provides the rule of decision. Fed. R. Evid. 501. Here, plaintiff asserts claims under both federal (42 U.S.C. § 1983) and state law (RCW Chapter 49.60). With regard to the privilege at issue in this case, no court in the Ninth Circuit or Washington has definitively spoken, but an Eighth

ORDER - 4

Circuit opinion provides some guidance. *See In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994). In *Bieter*, in the underlying antitrust action between Bieter, which was a Minnesota partnership, and various competing real estate developers, the district court compelled discovery of documents sent by Bieter's attorneys to a man named Dennis Klohs. *Id.* at 930, 933-34. Bieter asserted attorney-client privilege with regard to such documents and petitioned the Eighth Circuit for a writ of mandamus directing the district court to vacate its order. *Id.* at 930. The Eighth Circuit held that Dennis Klohs, who was acting as an independent consultant for Bieter, was "in all relevant respects the functional equivalent of an employee," and that communications between Klohs and Bieter's counsel were privileged. *Id.* at 937 ("[W]hen applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors."). Thus, the Eighth Circuit granted the requested writ and directed the district court to vacate its order compelling discovery. *Id.* at 940-41.

In reaching its decision, the Eighth Circuit was guided by the United States Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), which rejected the "control group" test for privilege because it "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation," *id.* at 392. *Bieter*, 16 F.3d at 937 (citing *Upjohn*). In *Upjohn*, the Supreme Court observed that the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389. Therefore, the *Upjohn* Court held that the attorney-client privilege extended to communications with counsel made by all employees, not just upper-echelon

ORDER - 5

1  management, concerning matters within the scope of their respective corporate duties,

2  supplied for the purpose of the corporation obtaining legal advice, and treated in a

3  confidential manner.  *Id.* at 394-95.

4  In *Bieter*, the Eighth Circuit applied a five-part test that is consistent with the

5  approach of *Upjohn*.  Under that standard, a communication is protected by attorney-client

6  privilege if (i) the communication was made for the purpose of securing legal advice; (ii) the

7  person making the communication did so at the direction of a superior in the organization;

8  (iii) the superior made the request so that the organization could secure legal advice; (iv) the

9  subject matter of the communication is within the scope of the person's duties; and (v) the

10  communication is not disseminated beyond those individuals who, because of the

11  organization's structure, need to know its contents.  16 F.3d at 936.  In using these criteria,

12  the *Bieter* Court concluded that the status of the person making the communication, whether

13  employee, independent contractor, or consultant, did not affect the analysis so long as the

14  person's role was equivalent to that of an employee.  *Id.* at 938.

15  In passing, the Eighth Circuit reminded the litigants that, although application of the

16  attorney-client privilege might cause inconvenience to the party seeking discovery, it did not

17  prevent that party from learning the underlying facts.  *Id.* at 940-41.  "[T]he protection of the

18  privilege extends only to *communications* and not to facts.  A fact is one thing and a

19  communication concerning that fact is an entirely different thing.  The client cannot be

20  compelled to answer the question, 'What did you say or write to the attorney?' but may not

21  refuse to disclose any relevant fact within his knowledge merely because he incorporated a

22  statement of such fact into his communication to his attorney."  *Id.* at 941 (quoting *Upjohn*,

23  449 U.S. at 395-96) (emphasis in original).

24  Here, plaintiff was entitled to, and did, depose Colleen Kinerk concerning the

25  investigation she performed.  Exh. 7 to Sheridan Decl. (docket no. 157).  Plaintiff was

26  entitled to, and did, receive copies of Ms. Kinerk's final letter report and supplemental letter

ORDER - 6

report. Exh. 3 to Sheridan Decl. (docket no. 157). Plaintiff was aware, prior to Ms. Kinerk's deposition, that Ms. Kinerk had, on the basis of attorney-client privilege, withheld copies of her draft reports. Exh. A to Kinerk Decl. (docket no. 141). Plaintiff was entitled to, and did, ask questions of Ms. Kinerk concerning whether she changed her reports or did anything further as a result of meeting with the Seattle City Attorney's Office to discuss her drafts.[1] Kinerk Dep. at 157:5-13, 159:23-160:2.

Plaintiff is not, however, entitled to receive the drafts themselves. The drafts satisfy the *Bieter* test for attorney-client privilege. In conducting the investigation concerning the anonymous complaint against Ms. Davis and Mr. Richards, Ms. Kinerk was the functional equivalent of an employee of Seattle City Light. Ms. Kinerk performed the same work that would have been done by Seattle City Light's EEO and Diversity Manager but for Ms. Davis's previous accusations of bias against Ms. Andrade and her pending lawsuit against Seattle City Light. Ms. Kinerk was directed by her superior in the organization, Ms. Andrade, to communicate with the Seattle City Attorney's Office prior to finalizing her report. She was instructed to do so, and did so, for the purpose of Seattle City Light securing legal advice from its attorneys. The subject matter of the communication was within the scope of Ms. Kinerk's duties, and the communication has been treated as confidential,

---

[1] Plaintiff provides no support for the assertion that, had Ms. Kinerk made changes at the suggestion of the Seattle City Attorney's Office, the investigation would have been "rigged" or "ethically suspect." Plaintiff's Response at 6 (docket no. 158). To the contrary, the Seattle City Attorney's Office might have legitimate concerns about the manner in which opinions or conclusions are expressed, as opposed to their substance, and might advise an external investigator to choose language less likely to offend, appear biased, or unnecessarily lead to litigation. Likewise, plaintiff offers nothing more than speculation for the contention that the City of Seattle asserts privilege solely to conceal findings changed after attorney consultation. To claim privilege, a party need not have any concerns about the content of a particular document; the party might simply wish to establish a precedent, avoid a finding of waiver, or exercise its rights. Moreover, plaintiff cites no authority for the proposition that a revision made pursuant to advice of counsel would somehow itself vitiate attorney-client privilege. Indeed, plaintiff's argument runs counter to the purposes underlying such privilege.

ORDER - 7

apparently going no further than Ms. Kinerk and the attorney with whom she met.  Indeed, Seattle City Light and the Seattle City Attorney's Office do not even have copies of the drafts at issue; Ms. Kinerk has possession of them.  Exh. I to Wollett Supp. Decl. (docket no. 162).  The Court therefore concludes that Seattle City Light and Ms. Kinerk are not required to disclose the drafts to plaintiff or her attorney.

The cases plaintiff has cited in opposition to the City of Seattle's motion for protective order are either adverse to plaintiff or not on point.  For example, in *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110 (1997), the California Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its order compelling discovery.  The trial court had ordered production of the plaintiff's personnel file, which included documents related to a law firm's investigation of the plaintiff's in-house charges of discrimination.  *Id.* at 117-18.  In response to the employer's writ petition, the plaintiff argued that the law firm was not acting in an attorney capacity when it investigated the plaintiff's in-house complaints and that the documents at issue were therefore not protected by attorney-client privilege.  *Id.* at 121.  The Court of Appeal disagreed, holding that a blanket rule excluding such attorney-conducted investigations from privilege protection is not appropriate; rather, the trial court should have based its ruling on a document-by-document review.  *Id.* at 122.  The plaintiff also contended that the employer waived any attorney-client privilege by asserting the investigation as a defense to the claims of discrimination in the pending lawsuit.  *Id.* at 125.  The Court of Appeal observed that the adequacy of an employer's investigation might be at issue if an employer's theory of defense was that it took reasonable remedial action, in which case the employer would be required to disclose documents relating to the investigation, but the plaintiff had not pleaded claims concerning which failure to take appropriate corrective measures was an element or had any relevance.  *Id.* at 127-29.  Thus, the waiver doctrine did not support the trial court's order requiring the employer to turn over the investigative file at issue.  *Id.* at 129.

ORDER - 8

Likewise, here, the drafts at issue are not related to any contention by Seattle City Light that it took remedial action in light of Ms. Davis's discrimination complaints. To the contrary, the drafts concern accusations of wrongdoing on Ms. Davis's part, and the City of Seattle has not asserted a defense based thereon that would result in a waiver of attorney-client privilege. Moreover, as recognized in *Wellpoint*, the fact that Ms. Kinerk acted in an investigatory, as opposed to a legal, capacity is not itself dispositive; the Court must evaluate the subject matter and function of the documents at issue. Here, the sole purpose of the drafts was to convey information to the attorneys for Seattle City Light to aid them in providing sound advice. To conclude that such drafts are not protected by attorney-client privilege would discourage the "full and frank" discussion necessary to an informed and reasoned legal opinion.

Similarly, plaintiff's reference to *Swenson v. Potter*, 271 F.3d 1184 (9th Cir. 2001), *Walker v. County of Contra Costa*, 227 F.R.D. 529 (N.D. Ca. 2005), and *Barfoot v. Boeing Co.*, 184 F.R.D. 642 (N.D. Ala. 1999), are to no avail. *Swenson* does not even address attorney-client privilege, *Walker* (like *Wellpoint*) deals only with the waiver of privilege when a company relies on an internal investigation as an affirmative defense, and *Barfoot* concerns an employer's attempt to conceal all materials relating to an internal investigation on the "disingenuous ground," 184 F.R.D. at 644, that it was initiated at the direction of corporate counsel. Although the district court in *Barfoot* rejected the employer's blanket assertion of privilege, it recognized that some materials produced in an internal investigation would be protected, including those that embody the advice, consent, or directions of counsel, and those that were generated in anticipation of litigation. *Id.* at 645. Unlike the employer in *Barfoot*, the City of Seattle does not contend that all documents generated by Ms. Kinerk are protected by privilege; it seeks to shield from disclosure only those documents used by Ms. Kinerk in her meetings with counsel. Because plaintiff is not

entitled to ask or know what Ms. Kinerk said or wrote to the attorneys, *Upjohn*, 449 U.S. at 396, plaintiff is not entitled to receive the draft reports at issue.

Other than Ms. Kinerk's draft reports and the drafts described earlier as either previously disclosed or nonexistent, plaintiff has not identified any items on the City of Seattle's privilege log that are sought and potentially discoverable. Thus, the Court GRANTS the City of Seattle's motion for a protective order as to all documents contained in the log as amended.

IT IS SO ORDERED.

DATED this 20th day of November, 2007.

                                     Thomas S. Zilly
                                     United States District Judge

ORDER - 10